IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JENNIFER C. HOWSE,

            Plaintiff,

                                    CIVIL ACTION
      vs.                           No. 04-2341-GTV

BARBARA F. ATKINSON, M.D.,
et al.,

            Defendants.


## MEMORANDUM AND ORDER

Plaintiff Jennifer C. Howse brings this action against Defendants Barbara F. Atkinson, M.D., Executive Dean and Vice Chancellor for Clinical Affairs at the University of Kansas School of Medicine,[1] Curt H. Hagedorn, M.D., Director of Gastroenternology in the Department of Internal Medicine at the University of Kansas Medical Center, and Kansas University Physicians, Inc. ("KUPI"), a private not-for-profit corporation which coordinates billing services for the physicians who provide patient care at the University of Kansas Medical Center. Plaintiff claims, pursuant to 42 U.S.C. § 1983, that all defendants terminated her employment in retaliation for exercising her First Amendment rights and conspired to deprive her of her constitutional rights. Additionally, under state law, Plaintiff alleges that Defendant KUPI discharged her in violation of

---

[1] Defendant Atkinson also became Executive Vice Chancellor of the University of Kansas Medical Center as of January 1, 2005.

public policy and that Defendants Atkinson and Hagedorn tortiously interfered with her contract of employment.[2]

This action is before the court on Defendants Atkinson's and Hagedorn's (collectively "Defendants") motion to dismiss (Doc. 24) pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6).   In particular, Defendants assert that they are entitled to qualified immunity and immunity under the Eleventh Amendment.   Defendants also argue that Plaintiff's § 1983 conspiracy claim should be dismissed for her failure to plead her allegations of conspiracy with specificity.   For the following reasons, Defendants' motion to dismiss is denied.[3]

## I.  Factual Background

The following facts are taken from the allegations in Plaintiff's First Amended Complaint.

KUPI employed Plaintiff as a secretary at the University of Kansas ("KU") Medical Center, Department of Internal Medicine, from August 2002 until March 2004.   On February 12, 2004, Chris Barone, a prospective patient, became belligerent with Plaintiff and cursed at her over the telephone.   Plaintiff's supervisor called KU police after Mr. Barone threatened to come to the Department of Internal Medicine to "raise hell."   Plaintiff cooperated with KU police and informed them about Mr. Barone's harassment of her and her co-workers.   Plaintiff decided to press charges against Mr. Barone.

---

[2]     Plaintiff invokes this court's federal question jurisdiction and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

[3]     Plaintiff attached several documents to her memorandum in opposition to Defendants' motion to dismiss.   The court, however, declines to convert Defendants' motion to one for summary judgment, and therefore, matters outside the pleadings were not considered in ruling on this motion.

2

The next day, an agent[4] from Defendant Atkinson's office visited Plaintiff, asking her to drop the charges against Mr. Barone in exchange for an apology.  The agent informed Plaintiff that Defendant Atkinson received a phone call from Kansas State Senator Jim Barone, Chris Barone's father, wanting Plaintiff to drop the charges against his son.  Plaintiff refused.  She later received a telephone call from an agent of Defendant Atkinson requesting that she drop the charges.  Plaintiff again refused.  During this same period, an attorney for KU called Plaintiff and asked her to drop the charges against Mr. Barone in exchange for an apology and flowers.  Plaintiff informed the attorney that she would not do so.  Plaintiff eventually received another telephone call from a KU agent urging her to drop the charges.  She refused.  At some point, Plaintiff alleges that Defendant Hagedorn informed her that she would be fired if she pursued the charges against Senator Barone's son.

On the morning of March 9, 2004, Plaintiff attended a hearing at the Kansas City, Kansas Municipal Court regarding her charges against Chris Barone, as she was instructed to do by the KU police.  Later that afternoon, KUPI terminated Plaintiff's employment.  Eventually, Mr. Barone plead no contest to Plaintiff's charges and a fine was imposed against him.

## II.  Standard of Review for a Motion to Dismiss Pursuant to 12(b)(6)

A Rule 12(b)(6) motion to dismiss will be granted only if it appears beyond a doubt that the plaintiff is unable to prove any set of facts entitling him to relief under his theory of recovery. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  "All well-pleaded facts, as distinguished from

---

[4]    The term "agent" is used in Plaintiff's First Amended Complaint and is not further described in the pleading.

conclusory allegations, must be taken as true." Swanson v. Bixler, 750 F.2d 810, 813 (10th Cir. 1984). The court must view all reasonable inferences in favor of the plaintiff, and the pleadings must be liberally construed. Id.; Fed. R. Civ. P. 8(f). The issue in reviewing the sufficiency of a complaint is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982).

### III. Discussion

Plaintiff has sued Defendants in both their individual and official capacities under § 1983. With regard to the First Amendment retaliation claims against them in their individual capacities, Defendants assert that they are entitled to qualified immunity.

#### A. Qualified Immunity Standard

Qualified immunity shields an individual government official performing discretionary functions from liability for civil damages insofar as his or her conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Butler v. City of Prairie Village, 172 F.3d 736, 745 (10th Cir. 1999). A defense based upon qualified immunity is ordinarily raised in a motion to dismiss, before the parties commence discovery. The purpose in addressing qualified immunity early is to protect the "substance" of the defense–to prevent defendants from being subjected to unnecessary and burdensome discovery. Crawford-El v. Britton, 523 U.S. 574, 597-98 (1998).

Once a defendant asserts qualified immunity as a defense, the court employs a two-part test. First, the court must decide whether the plaintiff has "'asserted a violation of a constitutional right

4

at all.'"  <u>Moore v. City of Wynnewood</u>, 57 F.3d 924, 931 (10th Cir. 1995) (quoting <u>Siegert v.</u>

<u>Gilley</u>, 500 U.S. 226, 232 (1991)).   The court must determine, in the light most favorable to the

plaintiff, whether the facts alleged establish that the defendant's conduct violated a constitutional

right.   <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001) (citation omitted).   If the plaintiff has made a

valid claim, then the court must evaluate whether the asserted right was clearly established.   "For

a constitutional right to be clearly established, its contours 'must be sufficiently clear that a

reasonable official would understand that what he is doing violates that right.'"   <u>Hope v. Pelzer</u>,

536 U.S. 730, 739 (2002) (citations omitted).   "[T]he plaintiff does not have to show that the

specific action at issue had been held unlawful, but the alleged unlawfulness of the defendant's

conduct must be apparent in light of preexisting law."  <u>Armijo v. Wagon Mound Pub. Sch.</u>, 159 F.3d

1253, 1260 (10th Cir. 1998) (citation omitted).   "The plaintiff may satisfy his or her burden by

showing that there is a Supreme Court or Tenth Circuit opinion on point, or that his or her

proposition is supported by the weight of authority from other courts."  <u>Id.</u> (citation omitted).

1. Constitutional Violation

Under the above-stated qualified immunity standard, the court first analyzes whether

Plaintiff has asserted any constitutional violations at all.   For the reasons set forth below, the court

concludes that Plaintiff has met her burden.

The Tenth Circuit applies the Pickering test[5] when evaluating a public employee's claim that

she was retaliated against for exercising her First Amendment right of freedom of speech.   <u>See,</u>

---

[5]        This test is based on the United States Supreme Court's decision in <u>Pickering v. Board of</u>
<u>Education</u>, 391 U.S. 563 (1968).

5

e.g., Ballard v. Muskogee Reg'l Med. Ctr., 238 F.3d 1250, 1252 (10th Cir. 2001).  The Pickering test requires a public employee to prove that:  "(1) the speech in question involves a matter of public concern; (2) h[er] interest in engaging in the speech outweighs the government employer's interest in regulating it; and (3) that the speech was as substantial motivating factor behind the government's decision to take an adverse action against the employee."  Baca v. Sklar, 398 F.3d 1210, 1218 (10th Cir. 2005) (citing Horskoetter v. Dep't of Pub. Safety, 159 F.3d 1265, 1271 (10th Cir. 1998)).

Both sides agree that because Plaintiff is not a public employee, her First Amendment retaliation claim against Defendants Atkinson and Hagedorn is governed by the test set forth in Worrell v. Henry, 219 F.3d 1197 (10th Cir. 2000).  In Worrell, the Tenth Circuit provided an alternative to the Pickering test for assessing First Amendment retaliation claims "against a defendant who is neither an employer nor a party to a contract with the plaintiff."  Id. at 1213.  This alternative framework requires proof of three elements:

> (1) that the plaintiff "was engaged in constitutionally protected activity"; (2) that the defendant's actions caused the plaintiff "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) that the "defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct."

Id. at 1212 (quoting Lackey v. County of Bernalillo, No. 97-2265, 1999 WL 2461, at *3 (10th Cir. Jan. 5, 1999)).

a.  Constitutionally Protected Activity

Count One of Plaintiff's First Amended Complaint alleges:  "In expressing her good faith and reasonable concerns to the police about illegal harassment of her and her co-workers by Chris

6

Barone, and by participating in the criminal legal proceedings against Chris Barone," Plaintiff was engaged in protected speech under the First Amendment.

Defendants argue that no First Amendment right exists to pursue a municipal ordinance violation against a prospective customer of one's employer. Moreover, Defendants maintain that no court has ever determined that providing information to the police alleging the violation of a municipal ordinance constitutes activity protected by the First Amendment. Defendants state that only a few cases support the proposition that filing a criminal complaint is protected under the First Amendment. And these cases, Defendants assert, were discussed within the context of the First Amendment's Petition Clause–a legal theory, Defendants contend, that was not set forth in Plaintiff's First Amended Complaint. In response, Plaintiff reiterates that she was fired in retaliation for participating in criminal proceedings against Chris Barone. She asserts that access to the courts, and in particular, the right to file a criminal complaint with the government for the redress of grievances, is a constitutionally protected right.

It is true that Plaintiff's First Amended Complaint does not refer to the Petition Clause of the First Amendment. Rather, Plaintiff characterizes her participation in legal proceedings against Chris Barone as exercising her constitutional right to free speech. Plaintiff's apparent reliance on the First Amendment's Free Speech Clause, as opposed to the Petition Clause, is not fatal. It is long established that on a motion to dismiss, the court must accept all well-pleaded allegations of the complaint as true, and must view those allegations in the light most favorable to the plaintiff. Swanson, 750 F.2d at 813. In Evans v. McDonald's Corporation, the Tenth Circuit stated:

As a general rule, a plaintiff should not be prevented from pursuing a valid claim just

>because she did not set forth in the complaint a theory on which she could recover,
>"provided always that a late shift in the thrust of the case will not prejudice the other
>party in maintaining his defense upon the merits."  The purpose of "fact pleading,"
>as provided by Fed. R. Civ. P. 8(a)(2) is to give the defendant fair notice of the
>claims against him without requiring the plaintiff to have every legal theory or fact
>developed in detail before the complaint is filed and the parties have opportunity for
>discovery.

936 F.2d 1087, 1090-91 (10th Cir. 1991) (internal citations and citations omitted); see also

Crawford v. Plumm, No. 03-2155-DJW, 2003 WL 22849183, at *1 (D. Kan. Nov. 24, 2003)

(citations omitted) (A complaint "should not be dismissed merely because the plaintiff's

allegations do not support the *stated* legal theory, for the court is obligated to determine whether

the allegations support relief on *any possible theory*.") (citations omitted) (emphasis in original);

Loeffelbein v. Milberg Weiss Bershad Hynes & Lerach, LLP, No. 02-2435-CM, 2003 WL

21313957, at *5 n.4 (D. Kan. May 23, 2003) (citations omitted) (stating that ""the complaint need

not identify a legal theory, and specifying an incorrect theory is not fatal""); Mike Albert Leasing,

Inc. v. Crowdus, No. 88-1268-T, 1989 WL 41636, at *2 (D. Kan. Mar. 27, 1989) (citation

omitted) ("The court of course is not bound by the plaintiff's legal theory in construing the

complaint. The court can independently discern the gravaman of plaintiff's case.").

The court concludes that Plaintiff's pursuit of criminal charges against Chris Barone is a

constitutionally protected activity under the First Amendment's Petition Clause. The Supreme

Court has recognized that the right to petition the Government for the redress of grievances is

"one of 'the most precious of the liberties safeguarded by the Bill of Rights . . . .'" BE&K Constr.

Co. v. NLRB, 536 U.S. 516, 524 (2002) (quoting United Mine Workers v. Ill. Bar Ass'n, 389 U.S.

217, 222 (1967)). "The right to petition is cut from the same cloth as the other guarantees of . .

8

. [the First] Amendment, and is an assurance of a particular freedom of expression." McDonald v. Smith, 472 U.S. 479, 482 (1985). "Certainly the right to petition extends to *all* departments of the Government." Cal. Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972) (emphasis added). Indeed, "[t]he right of access to the courts is . . . one aspect of the right of petition." Id. (citations omitted). "For example, filing a complaint in court is a form of petitioning activity, but 'baseless litigation is not immunized by the First Amendment right to petition.'" McDonald, 472 U.S. at 484 (citations omitted). "[E]xcept in the most extreme circumstances[,] citizens cannot be punished for exercising this right 'without violating those fundamental principles of liberty and justice which lie at the base of all civil and political institutions . . . .'" Id. at 486 (Brennan, J., concurring) (citation omitted).

The three cases cited by Defendants support the court's conclusion. First, in Estate of Morris v. Dapolito, the court rejected the defendants argument that the filing and pursuing of a criminal complaint for third degree assault, a misdemeanor, did not constitute protected activity under the First Amendment's Petition Clause. 297 F. Supp. 2d 680, 684, 691-92 (S.D.N.Y. 2004). Similarly, in Lott v. Andrews Center, the court held that the plaintiff alleged a constitutionally protected activity when she claimed that she was fired for filing a criminal complaint charging burglary against her co-worker. 259 F. Supp. 2d 564, 567-68 (E.D. Tex. 2003). In fact, the court stated that "[t]here is no doubt that filing a legitimate criminal complaint with law enforcement officials constitutes an exercise of the First Amendment right [to petition]." Id. at 568. Finally, in Rinehart v. Mt. Penn Borough Municipal Authority, the court concluded that a public employee's filing of a police report concerning alleged illegal activity in government offices was

9

an activity protected by the First Amendment.  No. Civ. A. 01-5628, 2002 WL 32341795, at *5-6

(E.D. Penn. Dec. 19, 2002).  Defendants emphasize that the charge Plaintiff pursued against Chris

Barone amounted to only a municipal violation.  The court, however, is not convinced that

Plaintiff's pursuit of a municipal ordinance violation, as opposed to a violation of a state or federal

criminal statute, deserves any less protection under the First Amendment.

Defendants also cite Leeke v. Timmerman, 454 U.S. 83 (1981), Linda R.S. v. Richard D.,

410 U.S. 614 (1973), and Ostrowski v. Mehltretter, 20 Fed. Appx. 87 (2d Cir. 2001) for the

proposition that the Constitution does not guarantee a private citizen the right to bring a criminal

complaint against another individual.  The court, however, finds those cases distinguishable from

the present case.

In Leeke, the United States Supreme Court dismissed a § 1983 suit on the basis of standing.

454 U.S. at 86-87.  The plaintiffs, prison inmates, sought arrest warrants against four prison guards

who allegedly beat them causing injury.  Id. at 84.  State officials, however, allegedly interfered

with the plaintiffs attempt to have the arrest warrants issued when a letter was written to the

presiding magistrate judge requesting that the warrants not be issued.  Id. at 85.  The Supreme

Court questioned the nexus between the plaintiffs' injury, the alleged beatings, and the actions of

the state officials in providing information to the magistrate before the issuance of an arrest

warrant.  Id. at 86.  The Supreme Court reasoned that the decision to prosecute was solely within

the prosecutor's discretion, so even without action by the state officials, there was no guarantee

that the issuance of the arrest warrants would lead to a subsequent prosecution and remedy the

alleged beatings.  Id. at 86-87.  Recognizing its prior ruling in Linda R.S. v. Richard D. that "'a

private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another,'" the Supreme Court concluded that the plaintiffs could not prevent the state officials from providing information to the magistrate judge to assist in the determination of whether an arrest warrant should issue.  Id. (citing Linda R.S., 410 U.S. at 619).  In dicta, the Supreme Court noted that the case may be different if the prison officials interfered with the plaintiffs' ability to provide information to the magistrate.  Id. at 87.  But the Supreme Court observed that the plaintiffs "had access to judicial procedures to redress any claimed wrongs" and "were able to 'set in motion the governmental machinery.'"  Id. (citation omitted).

The Supreme Court also decided Linda R.S. v. Richard D. on standing grounds.  410 U.S. at 617-18.  In that case, the plaintiff, the mother of an illegitimate child, challenged a local prosecutor's refusal to enforce a criminal statute against the child's father.  Id. at 614-15.  The particular statute imposed a duty on parents to provide support and maintenance to their children, but state courts construed the statute to apply only to parents of legitimate children.  Id. at 615.  The Supreme Court held that the plaintiff lacked standing because it was speculative whether her injury, the failure to secure child support payments, could be redressed by the enforcement of the child support statute.  Id. at 618.  Moreover, the Supreme court cited prior cases which held that "a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution," and thus, a private citizen does not possess "a judicially cognizable interest in the prosecution or non prosecution of another."   Id.; see also Ostrowski v. Mehltretter, 20 Fed. Appx. 87, 91 (2d Cir. 2001) (holding that the plaintiff lacked standing to sue the defendant, a federal prosecutor, for failing to investigate or prosecute another

individual).

After a review of these decisions, the court determines that they support the conclusion that a private citizen does not have the right to compel a state to enforce a criminal law because there is no right to the prosecution of another.    Plaintiff, however, does not attack a matter of prosecutorial discretion.    She claims that Defendants interfered with her access to the courts by requesting that she drop the charges against Mr. Barone and subsequently retaliated against her for refusing to do so.    While Plaintiff did not have a right to force the local prosecutor to pursue her charges, she possessed the right to access judicial procedures for redress of her claimed wrongs and to "set in motion the governmental machinery."

Finally, Defendants argue that Plaintiff's petition must be a matter of public concern to be considered a constitutionally protected activity under the First Amendment's Petition Clause.    The court agrees.    It is well-settled that plaintiffs asserting First Amendment retaliation claims based on the Free Speech Clause must establish that the speech in question involved matters of public concern.    See, e.g., Baca v. Sklar, 398 F.3d at 1218 (citation omitted).    Moreover, in Martin v. City of Del City, the Tenth Circuit held that a public employee asserting a First Amendment retaliation claim based on the Petition Clause must satisfy the public concern requirement.    179 F.3d 882, 886-89 (10th Cir. 1999).    Although Plaintiff is not a public employee, the court believes that the analysis is the same.    Van Deelen v. Shawnee Mission Unified Sch. Dist. #512, 316 F. Supp. 2d 1052, 1059 (D. Kan. 2004) (citing McCook v. Springer Sch. Dist., 44 Fed. Appx. 896, 904 (10th Cir. 2002) ("[E]ven outside the public employment context, the Tenth Circuit requires that, in order for speech to be protected, it must touch upon a matter of public concern.").

12

Whether Plaintiff's pursuit of criminal proceedings against Chris Barone involved a matter of public concern is a question of law for the court.  Bass v. Richards, 308 F.3d 1081, 1088 (10th Cir. 2002) (citation omitted).   "Generally, speech involves a matter of public concern when it is 'of interest to the community, whether for social, political, or other reasons,' rather than a matter of a mere personal interest to the speaker."  Id. at 1089 (citing Horstkoetter, 159 F.3d at 1271). "In analyzing whether speech constitutes a matter of public concern, [the court] may focus on the motive of the speaker and whether the speech is calculated to disclose misconduct or merely deals with personal disputes and grievances unrelated to the public's interest."  Lighton v. Univ. of Utah, 209 F.3d 1213, 1224 (10th Cir. 2000).   The court may also look at the "content, form, and context" of a plaintiff's petitioning activity to discern whether it is a matter of public concern. Baca, 398 F.3d at 1219 (citing Connick v. Myers, 461 U.S. 138, 147-48 (1983)).

Defendants contend that Plaintiff's reporting of Chris Barone's behavior to police and subsequent insistence on pursuing her complaint in a municipal court proceeding is not a matter of public concern.   Specifically, Defendants argue that it is unreasonable "to conclude that the general public would be 'truly concerned' about whether inappropriate language during a telephone conversation between an individual seeking medical care and a medical secretary constitutes a violation of a local municipal ordinance."   In response, Plaintiff acknowledges that concern for her own safety played a role in filing charges against Mr. Barone.   Plaintiff, however, also emphasizes that she felt a responsibility to protect her colleagues and the patients at the KU Medical Center from Mr. Barone's threats that he was going to come to her department to "raise hell."

Although a close issue, the court concludes that Plaintiff's petitioning activity involved a matter of public concern. Based on Plaintiff's allegations, which the court must accept as true, it appears that Plaintiff had a mixed motive to pursue charges against Chris Barone–one motivated by personal interest as a victim, one motivated by legitimate concerns for the public's safety.  See Mitchell v. Coffey County Hosp., 903 F. Supp. 1415, 1424 (D. Kan. 1995) (observing that the security and safety of public hospitals is a matter of public concern).

The court therefore concludes that the allegations contained in Plaintiff's First Amended Complaint are sufficient to demonstrate that Plaintiff participated in a constitutionally protected activity.

### b.  Plaintiff's Injury

Second, Plaintiff has sufficiently alleged that Defendants' actions caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in such activity. The loss of employment satisfies this injury requirement.   Worrell, 219 F.3d at 1213 (citation omitted).

### c.  Defendants' Intent

Finally, viewing Plaintiff's allegations as true, she has sufficiently alleged that Defendants' actions were substantially motivated by her pursuit of criminal charges against Chris Barone. Plaintiff's First Amended Complaint claims that she was asked on four occasions to drop the charges against Mr. Barone, but that she refused each time.   She also alleged that Defendant Hagedorn told her that she would be fired if she proceeded with the charges.   These allegations, coupled with her claim that she was fired on the same day she attended a hearing concerning the

charges, are enough to allow Plaintiff to proceed on her First Amendment retaliation claim.

Accordingly, the court concludes that the allegations contained in Plaintiff's First Amended Complaint assert the violation of a constitutional right.

### 2.  Clearly Established Right

Because Plaintiff's First Amended Complaint asserts a constitutional violation, the court proceeds to the issue of whether this constitutional right was clearly established.  The court holds that the protected status of Plaintiff's activities was sufficiently clear that Defendants should have been on notice that their actions would violate Plaintiff's First Amendment rights.

Defendants argue that no court has ever held that the First Amendment affords protection to an employee that pursues an alleged municipal ordinance violation against a potential customer of his or her employer.  Moreover, Defendants state that the cases they cited regarding the right to petition the government for redress of grievances cannot reasonably constitute a clearly established weight of authority to support Plaintiff's characterization of her First Amendment rights, and thus, it is not reasonable to suggest that they had notice that their alleged conduct violated a clearly established right.  The court disagrees.

The court concludes that a reasonable person in the position of Defendants would have known that Plaintiff could not be terminated for pursuing a criminal charge against Mr. Barone. Plaintiff's failure to provide the court with case authority based on similar facts to hers does not entitle Defendants to qualified immunity.  "[Q]ualified immunity will not be granted if government defendants fail to make 'reasonable applications of the prevailing law to their own circumstances.'"  Pierce v. Gilchrist, 359 F.3d 1279, 1298 (10th Cir. 2004) (citations omitted).

"The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation."   Id.   It is well-established in the Tenth Circuit that retaliation for the exercise of First Amendment rights is unconstitutional.   Furthermore, the right of access to the courts provides an individual the opportunity to redress his or her grievances in court.   Based on a reasonable application of these rights, the court concludes that Defendants had fair warning that their alleged conduct violated the First Amendment.   See Estate of Morris, 297 F. Supp. 2d at 695-96 (concluding that the First Amendment right to file a criminal complaint was clearly established).

### B.  Eleventh Amendment Immunity

With regard to Plaintiff's claims against Defendants in their official capacities, Defendants correctly note that under Eleventh Amendment immunity Plaintiff may only seek prospective injunctive relief.   Thompson v. Colorado, 278 F.3d 1020, 1024 (10th Cir. 2001); see Stidham v. Peace Officer Standards & Training, 265 F.3d 1144, 1156 (10th Cir. 2001) (citation omitted) (stating that a state official sued in his or her official capacity for prospective injunctive relief is a "person" under § 1983).   Defendants, however, maintain that they do not have the authority to comply with Plaintiff's request for prospective injunctive relief against them–reinstatement to Plaintiff's prior position at KUPI–because they are not officers of Defendant KUPI.   At this time, the court will not dismiss Plaintiff's claims against Defendants in their official capacities based on their asserted lack of authority to reinstate Plaintiff to her former position at KUPI. Defendants failed to attach an affidavit or some other document to support their position.

16

C.  Conspiracy Claim

Lastly, Defendants seek dismissal of Plaintiff's § 1983 conspiracy claim.  They contend that Plaintiff's conclusory allegations of conspiracy are not sufficient to state a valid claim.

"Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim."  Durre v. Dempsey, 869 F.2d 543, 545 (10th Cir. 1988).  "In pleading conspiracy under § 1983, a plaintiff must allege specific facts showing an agreement and concerted action among the alleged co-conspirators."  Jackson v. Kan. County Ass'n Multiline Pool, No. 03-4181-JAR, 2005 U.S. Dist. LEXIS 5434, at *33 (D. Kan. Jan. 19, 2005) (citing Hunt v. Bennett, 17 F.3d 1263, 1266 (10th Cir. 1994)).

After reviewing Plaintiff's First Amended Complaint, the court concludes that Plaintiff has alleged specific facts from which it could be inferred that an agreement existed amongst the three defendants.  In short, Plaintiff's allegations of conspiracy are sufficient to give Defendants fair notice of the basis of her claim.  Accordingly, Defendants' motion to dismiss Plaintiff's conspiracy claim is denied.

IT IS, THEREFORE, BY THE COURT ORDERED that Defendants' motion to dismiss (Doc. 24) is denied.

Copies of this order shall be transmitted to counsel of record.

**IT IS SO ORDERED.**

Dated at Kansas City, Kansas, this 4th day of May 2005.


/s/ G.T. VanBebber
G. Thomas VanBebber
United States Senior District Judge

18